UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>NASSAU BREWING COMPANY LANDLORD LLC,<br><br>        Debtor. | Case No. 21-41852-JMM<br>Chapter 11 |
| CF-IF 2020-1, LLC,<br><br>        Plaintiff,<br><br> - against -<br><br>VALLEY NATIONAL BANK, as Agent and Lender of a Secured Super-Priority Debtor in Possession Loan Agreement,<br><br>        Defendant. | Adv. Pro. No: 23-___ |

## **COMPLAINT**

Plaintiff CF-IF 2020-1, LLC ("**Churchill**" or "**Plaintiff**"), by and through its attorneys, Davidoff Hutcher & Citron LLP, brings the following Complaint against Defendant Valley National Bank ("**Valley National**" or "**Defendant**"), as Agent and Lender of a Secured Super-Priority Debtor in Possession Loan Agreement in the above captioned Chapter 11 case. The allegations of the Complaint are based on the knowledge of Plaintiff, and on information and belief, including the investigation of counsel and review of publicly available information.

## **NATURE OF THE ACTION**

1. This dispute arises from Valley National's unilateral actions in direct violation of its obligations under a First Amended Secured Super-Priority Debtor in Possession Loan Agreement dated September 14, 2021 (as amended, the "**Loan Agreement**") between Valley

National (as Agent and Lender[1]) Churchill (as Lender), and Nassau Brewing Company Landlord LLC ("**Nassau Brewing**" or "**Debtor**"),[2] Valley National's breaches are grounded in its unilateral decisions to selectively enforce provisions of the Loan Agreement that benefit Valley National to the exclusion of its co-lender and in derogation of its obligations under the Loan Agreement.

2.      As detailed below, Nassau Brewing (the tenant at the property in question) filed for bankruptcy under Chapter 11 of the Bankruptcy Code on July 16, 2021.  Churchill and Valley National provided Nassau Brewing with post-petition financing and, in return, received first-priority security interests in all of the Debtor's property and super-priority claim status in the bankruptcy proceeding pursuant to the terms of the Loan Agreement.  Significantly, the Loan Agreement calls for unanimity in reaching decisions on managing the Loan.

3.      Valley National's unilateral post-petition decisions to (i) not extend the maturity date of the Loan, (ii) cease funding under the Loan, notwithstanding that the project is near completion and additional funds are needed to pay leasing and broker costs, and (iii) market the Property without seeking the Debtor's (or Churchill's) consent or the Court's approval.

4.      Churchill has specifically informed Valley National that it disagrees with its acts, that a Deadlock exists, and has exercised its right to compel Valley National to acquire Churchill's interest in the Loan Agreement.  Valley National has refused Churchill's request and has therefore failed to comply with the express terms of the Loan Agreement and continues to act in an unreasonable and reckless manner.  These actions have caused a substantial likelihood of damage to Churchill in the potential subordination of its claims against Nassau Brewing.

---

[1]      Capitalized terms not defined herein shall have the meaning set forth in the Loan Agreement, which is appended hereto as Exhibit 1.

[2]      This Action is a dispute between the co-Lenders, Churchill and Valley National.  Nassau Brewing's rights and obligations, as Debtor, under the Loan Agreement are not affected by the outcome of this Action.

## THE PARTIES

5.      Plaintiff CF-IF 2020-1, LLC is a Delaware Limited Liability Company, headquartered at 450 West 14th Street, 9th Floor, New York, New York 10014.

6.      Upon information and belief, Defendant Valley National Bank is a national registered banking association and maintains a principal place of business at 615 Main Avenue, Passaic, New Jersey and is authorized to do business in the State of New York.

## JURISDICTION AND VENUE

7.      This Adversary Proceeding relates to the Chapter 11 case entitled *In re Nassau Brewing Company Landlord LLC*, No. 21-41852-JMM (Bankr. E.D.N.Y.) now pending in this Court (the "**Bankruptcy Case**").

8.      Plaintiff is co-Lender to the post-petition Loan Agreement which was approved by this Court in the Final Order Authorizing Debtor-In-Possession Financing and Granting Adequate Protection to Pre-Petition Secured Lender, dated January 27, 2022 [Dkt. Nos. 72 and 72-1]. Plaintiff respectfully requests that this Court (a) to declare there is a Deadlock under the Loan Agreement and (b) compel Valley National to purchase Churchill's Percentage of the Loan or to sell to Churchill its Percentage of the Loan.

9.      This Court has jurisdiction pursuant to the jurisdictional provisions of the Loan Agreement governing disputes between the parties thereto.

10.     This is a non-core proceeding pursuant to 28 U.S.C. § 157(b).

11.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTUAL ALLEGATIONS**

**Nassau Brewing Enters Bankruptcy Protection and Churchill and Valley National Offer Post-Petition Financing**

12.     Prior to the commencement of the related Chapter 11 case, Nassau Brewing was a stalled mixed-use construction site consisting of residential and retail units in the former Nassau Brewing Company factory.  As a result of the conduct of Nassau Brewing's prior manager, the project had all but ceased and Nassau Brewing's key constituencies were looking for ways to maximize value of this seemingly failed project.

13.     On or about July 16, 2021, with the consent of Valley National and Churchill, Nassau Brewing filed a voluntary petition for relief with the United States Bankruptcy Court for the Eastern District of New York under Chapter 11 of the Bankruptcy Code (the "**Petition**").

14.     Upon information and belief, prior to filing the Petition, Valley National was a senior secured creditor of Nassau Brewing in the total outstanding principal sum of $18 million.

15.     In addition, Churchill's related entity, Churchill Real Estate Holdings LLC, was a Preferred Member of Debtor having advanced capital in the principal sum of $5 million, Churchill's preferred position also afforded it 25% of Nassau Brewing's common equity.

16.     Shortly after the filing of the Petition, Valley National and Churchill agreed to work together to fund Nassau Brewing to finish the Property and commence leasing in order to maximize progress.  To that end, Churchill and Valley National jointly agreed to loan Nassau Brewing an amount not to exceed $4,500,000.  That amount would have to be increased to account for additional amounts necessary to preserve certain historic tax credits and to account for leasing commissions.

4

17.    As a result, Nassau Brewing entered into a Loan Agreement with Churchill and Valley National as co-lenders.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit 1, § 1.1(a).

18.    In consideration for making the Loan, Churchill and Valley National received secured first priority liens on "all of the assets of [Nassau Brewing], including but not limited to the Property" located at 945 Bergen Avenue, Brooklyn, New York (the "**Property**").  See, Ex. 1, § 2.1(a).

19.    On or about January 27, 2022, the Bankruptcy Court entered an Order approving the Loan Agreement (the "**DIP Loan**").

20.    In or about June 17, 2022, the loan amount was increased to an amount not less than $9,450,000 (the "**Loan Amount**").

21.    On or about August 1, 2022, the Bankruptcy Court approved the Loan Amount in a final order.

22.    Churchill and Valley National each contributed 50% of the Loan Amount.  See, Ex. 1, Annex C.

23.    Pursuant to the terms of the Loan Agreement, Valley National was also appointed as exclusive Agent for the Lenders.  See, Ex. 1, § 9.2(a).

24.    Under the Loan Agreement, Valley National, as Agent, is to "act solely as agent of Lenders."  See, Ex. 1, § 9.2(a).

25.    Moreover, "[w]ith respect to any act or action (including failure to act) in connection with this Agreement or any other Loan Document, except as set forth in this Agreement or such Loan Document, Agent shall be entitled to refrain from such act or taking such action unless and until Agent shall have received instructions from <u>all</u> Lenders…With respect to any

other decision under the Loan Agreement, Agent shall refrain from acting in absence of <u>unanimous</u> consent of Lenders." <u>See</u>, Ex. 1, § 9.2(b) (emphasis added).

26.    In other words, Valley National, as Agent, cannot act with respect to any decisions regarding the Loan unless both Churchill and Valley National agree.

27.    Failure of the co-Lenders to agree results in a "Deadlock" under the express terms of the Loan Agreement.

28.    A "Deadlock" is defined in the Loan Agreement as follows: "[t]o the extent that Lenders cannot agree on a position with respect to the administration of the Loan and become deadlocked despite good faith efforts to resolve such deadlock[.]" <u>See</u>, Ex. 1, § 9.2(c).

29.    Once there is a Deadlock, "either Lender may request the purchase and sale of a Lender's Percentage of the Loan by the other Lender.  The purchase price shall be the selling Lender's Percentage of (i) all amounts advanced under the Loan; (ii) any accrued and unpaid interest and fees; and (iii) all other costs and expenses due and owing under the Loan or DIP Loan Documents." <u>See</u>, Ex. 1, § 9.2(c).

30.    In the event that neither Lender can decide which Lender should be the seller and which Lender should be the buyer, the "Lenders shall conduct an auction amongst themselves and the Lender willing to pay the most of the other's Percentage (after adjusting for any disproportionate Advances made under Section 9.2 above) shall be the purchasing Lender." <u>See</u>, Ex. 1, § 9.2(c).

**<u>Valley National Refuses to Dutifully Manage the Loan</u>**

31.    In or around August, 2022, shortly after the approval of the increase in the principal of the Loan, Churchill and Valley began discussing an extension of the maturity of the Loan. Churchill requested that the Lenders extend the DIP Loan until at least the end of the year.  This

request was based on a multitude of factors, including that the Debtor's plan was still under discussion, the Project was still being finalized, and the Debtor needed capital to pay leasing commissions and other expenses.  As a practical matter, it was in no party's interest to permit the DIP Loan to mature.

32.      However, Valley refused to extend the DIP Loan, instead seeking to rely on limited grants on the use of cash collateral.  Churchill disagreed with this determination and Valley was informed as such.

33.      Valley then permitted the Loan to slide into limbo.  Rather than default the DIP Loan so that the parties could move towards a rational exit from this case, Valley proceeded to take no action to default the then-matured DIP loan.

**Valley National Seeks Selective Enforcement of the DIP Loan**

34.      In or about February 2023, Valley National began communicating with counsel for the Debtor directly regarding the interest due and owing on the DIP Loan.  These communications were without Churchill's consent, and Churchill did not agree to or approve any attempted enforcement of the DIP Loan by Valley National.

35.      Valley National continued its unilateral campaign eventually issuing an ultimatum to Nassau Brewing, in which it threatened Nassau Brewing to either pay interest on the DIP Loan or face a motion seeking to compel it to pay Valley National and Churchill, as Lenders, post-petition interest.

36.      Churchill did not approve or direct Valley National, as Agent, to make any such ultimatum to Nassau Brewing.

37.     Section 9.2(b) of the Loan Agreement unambiguously provides that with respect to any decision under the Loan Agreement other than a funding, the "Agent shall refrain from acting in the absence of unanimous consent of the Lenders." See, Ex. 1, § 9.2(b).

38.     Valley National's material ultimatum issued to the Debtor – without Churchill's consent or knowledge – unequivocally violated Valley National's obligations under the Loan Agreement.

**<u>Churchill Demands Valley National Purchase Churchill's Percentage of the Loan</u>**

39.     By February 16, 2023, it became clear to Churchill that Valley National had no interest in working together in good faith, particularly given Valley National's refusal to alter its tenuous and self-serving position with respect to its negotiations with Nassau Brewing.

40.     As such, Churchill wrote a letter to Valley National's Senior Vice President, Commercial Real Estate Loans, Louis A. Mandarino, providing notice that there was a deadlock under Section 9.2(c) of the Loan Agreement, and demanding Valley National purchase Churchill's Percentage of the Loan.

41.     Valley National, however, refused Churchill's demand.

42.     In a February 17, 2023, letter, Valley National advised that because the Bankruptcy Court had ordered Valley National and Nassau Brewing to mediate their issues with Nassau Brewing, Valley National "would prefer to allow that process to go forward and work with Churchill and the other parties toward a resolution of outstanding issues that is in the best interest of all parties."

43.     Valley National further took the disingenuous position that its attempts to enforce the DIP Loan were not made in its role as Agent, but instead were performed in its role as pre-petition lender.

44.     Valley National's desire to "allow the process to go forward," however, was a lie. Indeed, instead of allowing the process to go forward as they had promised, Valley National, in or about February or early March 2023 – unilaterally and without informing Churchill or obtaining its consent – secretly engaged a broker as the "exclusive agent" to market and sell the Property.

45.     Valley National's secretive act of engaging a broker as the exclusive agent to market the Property for sale on the open market undermines, *inter alia*, Nassau Brewing's ability to emerge from bankruptcy protection or obtain additional post-petition financing.  Moreover, this brazen action violates both the spirit and intent, and the express terms of the Loan Agreement and possibly the automatic stay in the Chapter 11 case.

46.     In a letter dated February 22, 2023, Valley National attempted to quell Churchill's concerns by arguing that Valley National's uncompromising position with Nassau Brewing was "in its capacity as lender under its secured pre-petition credit facility with [Nassau Brewing]" and not as an Agent under the Loan Agreement.  This argument is totally meritless and ignores the impact of its actions on the Loan Agreement.

47.     Simply put, Valley National's acts are in bad faith and its attempts to market and sell the Property are being done solely to improve its position as a pre-petition creditor and circumvent the automatic stay by foreclosing on the Property, all to the potential detriment of Churchill's interests under the Loan Agreement.

48.     Valley National's unilateral acts of their refusal to discharge their responsibilities under the Loan Agreement in good faith and the engagement of a broker to market and sell the Property in the open market could negatively affect the Debtor's ability to obtain additional post-petition financing or from selling the Property to assist the Debtor from emerging from bankruptcy

protection and commits Churchill, as Lender, to a course of action that potentially exposes it to violations of the automatic stay and potentially the subordination of its claims under the Loan.

49.    As a result of Valley National's unauthorized acts and its refusal to reverse its illegally advanced positions, Churchill wrote a letter to Valley National on March 3, 2023.  In that letter, Churchill declared that there was a deadlock between the parties and again demanded that Valley National purchase Churchill's Percentage of the Loan.

50.    On or about March 9, 2023, Nassau Brewing filed a motion with the Bankruptcy Court requesting sanctions against Valley National for its procurement of a broker and seeking the subordination of Valley National's loan in violation of the automatic stay.

51.    Notwithstanding Nassau Brewing's motion before the Bankruptcy Court, Valley National, on March 13, 2023, again rejected Churchill's demand for Valley National to purchase Churchill's Percentage of the Loan.

### AS AND FOR A FIRST CLAIM
### (Declaratory Judgment That Valley National and Churchill are Deadlocked)

52.    Churchill repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.    Under Section 9.2(b) of the Loan Agreement, the Agent cannot act without unanimous consent of the Lenders.

54.    Pursuant to Section 9.2(c) of the Loan Agreement, the Lenders are deadlocked when the "Lenders cannot agree on a position with respect to the administration of the Loan."

55.    Here, the Lenders are deadlocked as to their positions on the future administration of the Loan.  Given Valley National's actions, described above, Churchill is uninterested in remaining partners with Valley National, given its unilateral and improper actions which directly impact and affect Churchill's interests in the Loan.

56.     A justiciable controversy exists between the parties concerning Churchill's ability to declare a deadlock under the Loan Agreement.

57.     Churchill has no adequate remedy at law.

58.     Churchill is entitled to a declaratory judgment finding and declaring that the Lenders are at a deadlock, pursuant to Section 9.2(c) of the Loan Agreement.

**AS AND FOR A SECOND CLAIM**
**(Declaratory Judgment That Valley National is Required to Purchase**
**Churchill's Percentage of the Loan or is Required to Sell to**
**Churchill its Percentage of the Loan)**

59.     Churchill repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     Pursuant to Section 9.2(c) of the Loan Agreement, when the Lenders are at a deadlock, "either Lender may request the purchase and sale of a Lender's Percentage of the Loan by the other Lender."

61.     Churchill has properly requested that Valley National purchase Churchill's Percentage of the Loan.

62.     Valley National has refused to purchase Churchill's Percentage of the Loan in violation of the Loan Agreement.  Valley National has also refused to sell its Percentage of the Loan to Churchill.

63.     A justiciable controversy exists between the parties concerning Plaintiff's ability to declare a deadlock and to demand Valley National purchase Churchill's Percentage of the Loan.

64.     Churchill has no adequate remedy at law.

65.     Churchill is entitled to a declaratory judgment declaring that, pursuant to Section 9.2(c) of the Loan Agreement, the Lenders are deadlocked and Valley National is required to purchase Churchill's Percentage of the Loan.

**PRAYER FOR RELIEF**

WHEREFORE, Churchill prays that the Court enter judgment in its favor and against Defendant for the following relief:

A.    On the first cause of action, against Defendant Valley National, a declaration that the Lenders are at a Deadlock pursuant to Section 9.2(c) of the Loan Agreement;

B.    On the second cause of action, against Defendant Valley National, a declaration that pursuant to Section 9.2(c) of the Loan Agreement, Valley National is required to purchase Churchill's Percentage of the Loan;

C.    An award of Plaintiffs' reasonable attorneys' fees and costs of this action; and

D.    Such other and further relief as the Court may deem just and proper.

Dated: March 22, 2023
           New York, New York

                                DAVIDOFF HUTCHER & CITRON LLP,

                                By:   _/s/ Larry Hutcher_____
                                          Larry Hutcher
                                          William H. Mack
                                          Jonathan S. Pasternak
                                605 Third Avenue
                                New York, New York 10158
                                (212) 557-7200
                                Fax (212) 286-1884
                                LKH@dhclegal.com
                                WHM@dhclegal.com
                                JSP@dhclegal.com
                                *Attorneys for Plaintiff*